IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARQUITA FRAZIER | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 22-4136 |
| CITY OF PHILADELPHIA, | : | |
| SERGEANT GREGORRIO SANTIAGO, | : | |
| CAPTAIN NASHID AKIL, and | : | |
| LIEUTENANT BRENT CONWAY | : | |

**<u>MEMORANDUM</u>**

**Chief Judge Juan R. Sánchez**                                    **September 15, 2023**

Defendants City of Philadelphia, Gregorrio Santiago, Nashid Akil and Brent Conway move for summary judgment on all four counts against them in Plaintiff Marquita Frazier's Complaint. Because there is no evidence in the record to support Frazier's claims she was subjected to retaliation and a retaliatory hostile work environment in violation of Title VII of the Civil Rights Act of 1964 or Section 1983, the motion has been granted.

**FACTUAL BACKGROUND**

Marquita Frazier has been employed by the City of Philadelphia as a police officer assigned to the 22nd Police District in North Philadelphia[1] since 2007. Defs.' Mot. Summ. J. Ex. A, at 16-18. Frazier's claims arise out of an incident which began shortly after 10 p.m. on June 30, 2018. At the time, Frazier was on patrol with a partner, Kiana Farlow, in the vicinity of 24th and Diamond Streets when their patrol car was flagged down by a complainant who reported her grandson had

---

[1] The 22nd District has the highest crime rate and most serious incidents in the City, including murders, rapes, drug sales and overdoses, carjackings and suicides. Defs.' Mot. Summ. J. Ex. A at 17-20, ECF No. 21-5. Although she could have requested a transfer, Frazier likes the "busyness" of working in the 22nd District and has never asked to be relocated. *Id.* at 18, 23-24.

just been robbed of his bicycle at gunpoint.  Compl. ¶¶ 25-27, ECF No. 1; Defs.' Answer, ECF
No. 10; Defs.' Mot. Summ. J. Ex. A, at 49-52.  Unbeknownst to Frazier, Officer Farlow radioed
for a supervisor during this encounter, and Defendant Sergeant Gregorrio Santiago responded.
Shortly after Santiago arrived, he and Farlow had a heated discussion over whether a police report
on the bike theft should be made and about the way Farlow was talking with the complainant.
Santiago ordered Farlow and Frazier to make a report and directed Farlow to meet him at district
headquarters when she had finished at the scene.  Defs.' Mot. Summ. J. Ex. A, at 52-53, 72.

When Farlow and Frazier returned to headquarters, Farlow went into the roll call room
with Santiago, while Frazier waited outside for her partner to finish the meeting.  Because she
could hear Santiago screaming at Farlow and Farlow at one point respond, "Don't touch me, get
your hands out of my face," Frazier entered the room, believing her partner needed help.  Upon
entering, Frazier saw Santiago standing inches away from where Farlow was sitting and yelling,
"my hands weren't in your face, I was in your face," before storming out of the room.  As a result
of this incident, Farlow filed an internal Equal Employment Opportunity (EEO) complaint
alleging Santiago discriminated against her based on her age, race, and/or sexual orientation by
treating her differently than others who were not in her same protected classes.  Pl.'s Opp'n. Defs.'
Mot. Summ. J. Ex. 2, ECF No. 25-3.

On August 2, 2018, Frazier was interviewed by Defendant Lieutenant Brent Conway, who
was assigned to investigate Farlow's EEO complaint.  *Id.*  During this interview, which lasted
nearly two hours, Frazier was shown video from Farlow and Santiago's body worn cameras and
Frazier answered Conway's questions about what she saw and heard both at the scene at 24th and
Diamond Streets and in the District 22 Headquarters on June 30, 2018.  *Id.*  Frazier acknowledged
telling Farlow that Santiago would not have talked to her the same way if she was a white female

and she admitted that no police report was prepared or filed as Santiago directed and she had tried to have the Philadelphia Housing Authority Police make the report.  *Id*. at 8-12; Defs.' Mot. Summ. J. Ex. A at 153-154.

Frazier claims she was thereafter subjected to a series of adverse employment actions in retaliation for her participation in the investigation into Farlow's EEO complaint against Santiago. According to Frazier, in October 2018, Sergeant Wilson, Corporal Ocasio, and Officer White spread rumors around the District that she was throwing paperwork in the trash, which resulted in Lieutenant Landherr later removing her from the operations room and assigning her to work the street.  Defs.' Mot. Summ. J. Ex. A at 150-153.  In November 2019, Frazier was notified she was being disciplined for failing to file a report on the June 2018 bike theft.[2]  In addition to appealing the discipline, Frazier filed an Internal Affairs Division (IAD) complaint alleging Conway had a personal friendship with Santiago and had altered the statement Frazier gave him in August 2018 by adding several more pages to the statement on November 28, 2018 to protect Santiago.[3]  *Id.* at 95-96, 107-110, 149.  Frazier also alleged that on several occasions, Santiago made "threatening gestures" to her and on one occasion, appeared to lunge toward her, which Frazier interpreted as hostile and retaliatory.  Defs.' Mot. Summ. J. Ex. Q, at 10, ECF No. 21-21.  She further claimed that on May 18, 2020, while they were both in the operations room, Santiago assaulted her by

---

[2]  The investigation into Farlow's EEO complaint concluded on July 26, 2019 with a finding that the charge of discrimination against Santiago was not supported, but Farlow and Frazier received discipline for failing to file the police report, as directed by Santiago.  Defs.' Mot. Summ. J. Ex. A. at 57; Ex. J at 18, ECF Nos. 21-5, 21-14.  Frazier was officially charged with neglect of duty for failure to make a required written report on November 1, 2019. She appealed, was found guilty of the disciplinary charge following a hearing, and received a one-day suspension on February 28, 2020.  Defs.' Mot. Summ. J. Exs. K, L, M, ECF Nos. 21-15, 21-16, 21-17.  She was docked one day's pay in March 2020.  Defs.' Mot. Summ. J. Ex. A at 156-158.

[3]  Frazier's complaint against Conway was determined to be false and unfounded.  Pl.'s Resp. Opp'n. Mot. Summ. J. Ex. 4, at 89-90.

3

hitting her in the back, ostensibly because she was "in his way." Defs.' Mot. Summ. J. Ex. A, at 97-101; Ex. Q, at 9-10. As a result of the latter incident, Frazier filed an EEO complaint which was followed by an IAD investigation. Defs' Mot. Summ. J. Ex. A, at 99; Ex. S, ECF No. 21-23. Less than two weeks later, Santiago was detailed out of the 22nd District to the 16th Police District.[4] Defs.' Mot. Summ. J. Ex. A, 101-102. Frazier also alleges she was subjected to "ongoing" incidents "with paperwork," and believes Lieutenant Landherr retaliated against her in January 2022 by changing her time off designation when she had COVID from "admin" or COVID time, which was paid by the City, to "sick," which counted against her sick leave balance. *Id.* at 158-160. In April 2022, Frazier's locker was broken into and her boots were cut, and Corporal Brooks marked her as having no time available to use when she called in sick on April 12th, resulting in a loss of some $300 in pay.[5] *Id.* at 160-162.

---

[4]   Although Frazier's internal affairs complaint against Santiago for this incident was "not sustained" by the IAD, the Mayor's office and the City's Department of Labor, Employee Relations Unit overrode that conclusion in their review of the EEO complaint and found Santiago had in fact "engaged in intimidating verbal and physical conduct" against her. Defs.' Mot. Summ. J. Ex. O, at 130-137; Pl.'s Resp. Opp'n. Mot. Summ. J. Ex. 5.

[5]   Frazier does not know who broke into her locker or cut her boots, and while she registered an internal (non-EEO) complaint about this incident, Frazier also complained her report of the incident was not taken seriously by Sergeant Gerald Rhoads to whom she reported it. The matter was investigated internally, but Sergeant Rhoads was found to have passed the Department's test for integrity and the complaint was closed. Defs.' Mot. Summ. J. Ex. Q, at 13-14. Frazier admitted in her deposition that she only suspects these actions had something to do with her ongoing complaints. Defs.' Mot. Summ. J. Ex. A, at 161. Further, on June 9, 2021, Frazier filed an EEO complaint against Corporal Brooks alleging Brooks retaliated against her for participating in an EEO investigation into another officer's complaint that Brooks had created a hostile work environment for her. Frazier contended Brooks retaliated against her by "failing to intervene when other employees and supervisors harassed her and by taking actions to make it appear as though Frazier was not completing her work." Defs.' Mot. Summ. J. Ex. Q, at 11. Frazier also filed an EEO complaint against Corporal Brooks and Lieutenant Landherr on May 12, 2022 for allegedly changing "DAR entries that were made for her, which led to her receiving a Five-Day Sick Warning Letter and her being carried "T" after she called out sick." *Id.* 14. In that complaint, Frazier again asserted Brooks and Landherr attempted to retaliate against her "because of prior EEO complaint she filed." *Id.* The record in this case is silent as to the outcome of these latter

Frazier's Complaint has a total of four counts – two for retaliation and retaliatory hostile work environment against only the City of Philadelphia under Title VII of the Civil Rights Act of 1964, (Counts I and II), and two for retaliation and retaliatory hostile work environment against all Defendants under 42 U.S.C. § 1983 (Counts III and IV).  Asserting there is no evidence from which a reasonable jury could find in Frazier's favor and her claims fail as a matter of law, Defendants move for the entry of summary judgment on all four counts and dismissal of this action in its entirety.

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to any claim or defense, and "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*  "As to materiality, … [o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment…; [f]actual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "A genuine dispute exits 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Stone v. Troy Construction, LLC,* 935 F.3d 141, 148 n. 6 (3d Cir. 2019) (quoting *Anderson*, 477 U.S. at 248 (1986)).

A "judge's function" in evaluating a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  "In making that determination, a court must view the

---

two internal EEO complaints and the Court is left to speculate that they are still under investigation by the police department.  In any event, none of the preceding complaints or incidents are mentioned in Frazier's Charges of Discrimination filed as prerequisites for this action with the Philadelphia Commission on Human Relations and the EEOC.  Pl.'s Resp. Opp'n. Mot. Summ. J. Ex. 8.

evidence in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) *(per curiam).* "A party will not be able to withstand a motion for summary judgment merely by making allegations." *In re Tribune Media Co.*, 902 F.3d 384, 392-393 (3d Cir. 2018) (quoting *In re Ikon Office Sols., Inc.*, 277 F.3d 658, 666 (3d Cir. 2002)). "Instead, the nonmoving party must 'designate specific facts' in the record to 'show that there is a genuine issue for trial.'" *Id.* (quoting *Celotex v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). In other words, "[t]he moving party is entitled to judgment as a matter of law when the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (citation omitted).

**DISCUSSION**

As stated, Frazier contends Defendants subjected her to a hostile retaliatory work environment in violation of Title VII and Section 1983[6] because she was a witness and participated in the investigation into Officer Farlow's EEO complaint against Sergeant Santiago.

---

[6] Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . .

Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this title [42 U.S.C. §§ 2000e-2000e-17]." 42 U.S.C. § 2000e-3(a). To survive summary judgment on a retaliation claim, a plaintiff must first make out a *prima facie* case by producing evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between the plaintiff's participation in the protected activity and the adverse employment action. *Kengerski v. Harper*, 6 F.4th 531, 536 (3d Cir. 2021). To succeed on a hostile work environment claim, a plaintiff must establish: (1) the employee suffered intentional discrimination because of participation in protected activity, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). "For a retaliation claim, a plaintiff need not show that h[er] working environment in hindsight was actually hostile, only that [s]he held an objectively reasonable belief that it was." *Kengerski,* 6 F.4th at 537.

If the employee establishes this *prima facie* case, then under the familiar *McDonnell Douglas* approach, the burden shifts to the employer to provide a legitimate, non-retaliatory explanation for its action against the plaintiff. *Moore v. City of Phila.*, 461 F.3d 331, 340 (3d Cir. 2006). If the employer meets that burden, the plaintiff can then only prevail at summary judgment

---

The essence of Frazier's Section 1983 claims is that Defendants retaliated against her for exercising her First Amendment rights by telling Conway what she saw and heard during Santiago and Farlow's confrontation over the stolen bicycle incident and for filing her own EEO complaints.

if he produces evidence that the employer's explanation is false and is a mere pretext. *Kengerski*, 6 F.4th at 536 n. 3; *see generally, McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To succeed on a First Amendment retaliation claim brought pursuant to § 1983, a government employee must demonstrate: "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Fenico v. City of Phila.*, 70 F.4th 151, 162 (3d Cir. 2023) (citation omitted). "The first factor is a question of law; the second factor is a question of fact." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). "To show that their speech is protected, the employee must establish first that: (1) in making it, they spoke as a private citizen; and (2) the statement involved a matter of public concern." *Fenico,* 70 F.4th at 162 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). Although "[e]mployees in some cases may receive First Amendment protection for expressions made at work," in the usual case, a public employee does not speak as a citizen when he makes a statement pursuant to his official duties. *Garcetti*, 547 U.S. at 420-421. "Speech relates to a matter of public concern when it can be fairly considered as relating to any matter of political, social or other concern to the community, as opposed to a purely intraoffice grievance." *Fenico*, 70 F.4th at 163. Notwithstanding that police misconduct is generally a matter of public concern, an employee's speech about police misconduct must be made as a private citizen to be protected under the First Amendment. *Kline v. Valentic*, 283 F. App'x 913, 916 (3d Cir. 2008).

Turning first to Frazier's Title VII claims, the City acknowledges Frazier was engaging in protected activity when she participated in Conway's investigation into Farlow's EEO complaint against Santiago, and when she filed her own EEO complaints against Corporal Brooks and Lieutenant Landherr. Thus, the first element necessary to establish the required *prima facie* showing has been satisfied.

As to the second element (adverse employment action), Frazier has testified to a variety of actions which occurred after she was interviewed and gave a statement to Conway concerning Farlow's EEO complaint, several of which were the impetus behind her filing EEO complaints against Conway and Santiago.[7]   Unlike the anti-discrimination provision, the anti-retaliation provision (§ 2000e-3(a)) "does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace," but "covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006).  This means that an employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace. *Id.* at 63.  Thus, to make out a claim of retaliation, a plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68.  In this way, "the antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.*

In this case, none of the actions of which Frazier complains involved a demotion in rank or pay, loss of promotional opportunities, or a reduction in the number of regular work hours. Defs.' Mot. Summ. J. Ex. A, at 20-25, 169, 173-176.  To the contrary, Frazier's annual salary has increased by more than $10,000 since 2018, and Frazier does not know what damages she incurred

---

[7] Frazier also filed an EEO complaint against Captain Nashid Akil and Sergeant Deborah Sanders-Wilson on April 5, 2021, alleging they retaliated against and harassed her following an incident in the 22nd District in which Officer Tynisha Smith "became combative and referred to Frazier as a whistleblower." Defs.' Mot. Summ. J. Ex. Q, at 11.  Frazier stated that following the incident, Captain Akil "decided to have this matter investigated, along with having Officer Frazier's assignment changed." *Id.*  Frazier claimed this was retaliation arising out of her having filed the EEO complaint against Santiago for assaulting her. *Id.*

because of the alleged hostile, retaliatory actions aside from the one day's lost pay from her suspension for not writing the report. *Id*. at 169-175, Ex. T.

However, Frazier was disciplined along with Farlow for failing to make a police report regarding the bicycle theft for which she lost one day's vacation pay. Santiago was also found by the mayor's office to have assaulted Frazier by striking her in the back. There is also evidence that Frazier was at one point re-assigned for a time from working in the operations center in the 22nd District headquarters and her time/time off entries were changed. *See*, Defs.' Mot. Summ. J. Ex. A, at 77-79, 87-94; Exs. F, M, O at 130-137; Pl.'s Resp. Opp'n. Mot. Summ. J. Ex. 5. But despite these actions, Frazier was not dissuaded from making or supporting charges of discrimination or otherwise engaging in protected activity. To the contrary, following her participation in Conway's investigation into Farlow's EEO complaint, Frazier filed no fewer than nine EEO/Internal complaints, including those noted above against Santiago, Conway, Brooks, Wilson, Landherr, and Akil. Defs.' Mot. Summ. J. Ex. Q, at 9-14. Clearly, she did not find her employer's actions to be materially adverse. Thus, in the absence of any showing that she suffered any alteration in her compensation, terms, conditions, or privileges of employment, or was dissuaded from making or supporting claims for discrimination and/or retaliation, Frazier has failed to demonstrate the second element needed to sustain a *prima facie* case.

Frazier also fails to make the showing necessary to sustain the third prong of the *prima facie* case: the existence of a causal connection between her participation in the protected activity and the alleged hostile and retaliatory actions which followed. For one, Frazier admits Santiago, a superior officer, directed her and Farlow to make a report on the bicycle incident, but that despite this order, neither of them did so. Defs.' Mot. Summ. J. Ex. A, at 53, 70-71, 153-154; Pl.'s Resp in Opp'n. Mot. Summ. J. Exs. 1, 2. Even though Frazier was not Farlow's supervisor, she had

been an officer with the Philadelphia Police Department since 2007, and was therefore the senior officer in her partnership with Farlow, who at the time the incident occurred, had only been on the force for a few months.  It is the partnership team which is responsible for completion of an assignment, and in this case, neither Farlow nor Frazier did what they were told.  Pl.'s Resp. Opp'n. Mot. Summ. J. Ex. 2; Ex. 4, at 25-27, 67-69; Defs.' Mot. Summ. J. Ex. O, at 116.  Thus, Frazier admits she neglected to fulfill her duties as an officer with the Philadelphia Police Department.  *Id.* Although Frazier was not disciplined until after the investigation into Farlow's EEO complaint against Santiago was completed and the matter reviewed by Inspector Hall, it was Inspector Hall, and not Conway or Akil, who ordered the discipline.  Frazier was found guilty of the disciplinary charge, and her one-day suspension was upheld following an appeal to the Police Board of Inquiry. Pl.'s Resp. Opp'n. Mot. Summ. J. Ex. 4, at 16-20; Defs.' Mot. Summ. J. Ex. B, at 17-18; Ex. Q, at 8-9.  Thus, all the evidence points to Frazier having been properly disciplined solely for neglect of duty in not making a report on her and Farlow's response to the stolen bicycle report and for trying to get the Philadelphia Housing Authority Police to do it instead.  Pl.'s Resp. Opp'n. Mot. Summ. J. Ex. 4, at 40-41.  There is absolutely no evidence whatsoever in the record suggesting Frazier was disciplined in retaliation for participating in the EEO investigation into Farlow's complaint or for making complaints of her own.  *See id.*

Next, by Frazier's own admission, very shortly after Frazier accused Santiago of striking her in the back, he was removed from the 22nd District and detailed to the 16th District.  Defs.' Mot. Summ. J. Ex. A, at 97-102.  Thus, the City addressed Santiago's conduct and in so doing, it did not take an adverse action against Frazier but against Santiago for engaging in intimidating and threatening conduct against Frazier and it did so to prevent and correct the harassing behavior. *See, e.g., Vance v. Ball State Univ.*, 570 U.S. 421, 429-430 (2013) (holding even when a

supervisor's harassment does not culminate in a tangible employment action, the employer can only be vicariously liable for the supervisor's creation of a hostile work environment if the employer does not show it exercised reasonable care to prevent and promptly correct any harassing behavior and the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities that were provided (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 763 (1998) and *Faragher v. Boca Raton*, 524 U.S. 775, 803-805 (1998)).

There is also no evidence, except for Frazier's own, very vague deposition testimony and supplemental declaration, to support her allegations that Conway changed the statement she gave during his investigation into Farlow's EEO complaint. There is also no evidence that this or any of the other actions Frazier complains of: her brief transfer to street patrol from the operations center following her confrontation with Tynisha Smith, the alterations in her pay, sick leave, and vacation time records, or the circulation of accusations and rumors that she threw out or mishandled other officers' paperwork were all in an attempt to create a hostile work environment and to retaliate against her for engaging in protected activity. As Landherr explained, in every police district he has worked in, operations room officers have been accused of throwing paperwork in the trash if for no other reason than the operations officers on an incoming shift don't like to have paperwork that they need to process from officers on an outgoing shift, and this type of accusation is therefore so commonplace that "you don't event entertain it." Defs.' Mot. Summ. J. Ex. D, at 49-50. Additionally, these rumors about Frazier throwing away paperwork when she worked the operations room pre-dated her participation in the investigation into Farlow's complaint, and Frazier was never subject to any disciplinary charge or action for mishandling paperwork. Defs.' Mot. Summ. J. Ex. C, at 92-99. As to Frazier's brief transfer from the operations room, Brooks testified that it is not at all uncommon for operations room officers to be

assigned to street patrol as the need for patrol officers can vary from day to day, and thus it was not unusual for Frazier to be detailed to the street. Further, as Brooks, Landherr and Akil all testified, Frazier was assigned to patrol duty from the operations room following her confrontation with Tynisha Smith because Smith had to be assigned to desk duty due to a work injury. Defs.' Mot. Summ. J. Ex. B, at 62-63; Ex. C, at 73-75, 106-111; Ex. D, at 51. Conway explained he never changed and/or asked Frazier to sign a statement which she hadn't read nor would he change anything because the body worn cameras showed everything that occurred between Farlow and Santiago at the scene at 24th and Diamond. Pl.'s Resp. Opp'n. Mot. Summ. J. Ex. 4, at 87. Conway did have Frazier sign a statement on the day she alleged she was called back to his office but it was a statement which she gave following an interview in another EEO investigation into a complaint filed by another officer, Stacy Gonzalez. *Id.* at 85-86.

Frazier offers no evidence to oppose the within motion aside from her own testimony concerning the rumors she has heard throughout the police department about other officers' activities and relationships to one another. Indeed, the record in this matter casts the culture of the Philadelphia Police Report in an unfavorable light with numerous examples of rumors, innuendo, backbiting, petty slights, and infighting. Title VII, however, does not create "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*. 523 U.S. 75, 80 (1998). To be actionable as a hostile work environment, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id*. at 78. Title VII "does not reach the ordinary tribulations of the workplace, for example, the sporadic use of abusive language or generally boorish conduct." *Vance*, 570 U.S. at 452 (internal citations and quotation omitted). Again, a party will not be able to survive summary judgment merely by

making allegations; she must show specific facts supporting the claims on which she bears the burden of proof.  Frazier has failed to do so with respect to her Title VII claims and the Court therefore entered summary judgment in favor of the City on Counts I and II of her complaint.

The Court reached the same conclusion with respect to Counts III and IV asserting retaliation and retaliatory hostile work environment against all defendants pursuant to Section 1983.  To reiterate, to prevail on her Section 1983 claims, Frazier must demonstrate that by participating in the EEO investigations and in filing EEO and other internal complaints, she was speaking as a private citizen about matters of public concern, and the Defendants retaliated against her for doing so.  In the usual case, a public employee does not speak as a citizen when she makes a statement pursuant to her official duties and the statement must concern something in the nature of a political, social, or other concern to the community and not merely an intraoffice grievance. *See, e.g., Garcetti*, 547 U.S. at 418, 420; *Fenico,* 70 F.4th at 163.

Here, Frazier's evidence shows her EEO-related speech concerned internal police department personnel disputes and grievances of concern only to those officers accused of or charged with violating and/or not performing certain duties related to their jobs.  In all respects, Frazier's speech was made solely in the context of her role as an employee of the police department and not as a private citizen and concerned only her own or other officers' intraoffice grievances. As such, it is not actionable under § 1983 and summary judgment was therefore also granted in favor of the Defendants on the final two counts of Frazier's complaint.

**CONCLUSION**

For all of the reasons articulated above, the Motion for Summary Judgment of the Defendants, City of Philadelphia, Gregorrio Santiago, Nashid Akil and Brent Conway has been

granted and  judgment entered in favor of the Defendants and against Plaintiff, Marquita Frazier on all claims.

BY THE COURT:


/s/ Juan R. Sánchez
_____
Juan R. Sánchez,        C.J.